IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


CORDELLUS MCMURTRY,          )
                                              )

               Plaintiff,        )
                                              )

         v.              )   No. 12 C 7060
                                            )

PARTHA GHOSH, M.D. and IMHOTEP  )
CARTER, M.D.,                 )

                                              )
             Defendants.    )


# OPINION AND ORDER

During times pertinent to this lawsuit, *pro se* plaintiff Cordellus

McMurtry was incarcerated at Stateville Correctional Center.  Plaintiff alleges that

defendants Partha Ghosh and Imhotep Carter, who are both former Medical

Directors at Stateville, acted with deliberate indifference to his serious medical

needs, a back injury.  Presently pending is defendants' motion for summary

judgment.

On a motion for summary judgment, the entire record is considered with

all reasonable inferences drawn in favor of the nonmovant and all factual disputes

resolved in favor of the nonmovant.  ***Crawford v. Metro. Gov't of Nashville &***

***Davidson Cnty., Tenn.***, 555 U.S. 271, 274 n.1 (2009); ***Malen v. MTD Prods.,***

***Inc.***, 628 F.3d 296, 303 (7th Cir. 2010); ***Stokes v. Bd. of Educ. of City of Chicago***, 599 F.3d 617, 619 (7th Cir. 2010).  The burden of establishing a lack of any genuine issue of material fact rests on the movant.  ***Ponsetti v. GE Pension Plan***, 614 F.3d 684, 691 (7th Cir. 2010); ***Outlaw v. Newkirk***, 259 F.3d 833, 837 (7th Cir. 2001).  The nonmovant, however, must make a showing sufficient to establish any essential element for which he will bear the burden of proof at trial.  ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986); ***Montgomery v. Am. Airlines, Inc.***, 626 F.3d 382, 389 (7th Cir. 2010).  The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements.  ***Celotex***, 477 U.S. at 324; ***Freundt v. Allied Tube & Conduit Corp.***, 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007); ***O'Brien v. Encotech Constr.***, 2004 WL 609798 *1 (N.D. Ill. March 23, 2004).  Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record.  *See **Lorillard Tobacco Co. v. A & E Oil, Inc.***, 503 F.3d 588, 594-95 (7th Cir. 2007); ***Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago***, 357 F.3d 677, 679 (7th Cir. 2004); ***Lampley v. Mitcheff***, 2010 WL 4362826 *6 (N.D. Ind. Oct. 27, 2010).  As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the
> initial burden of production to identify "those portions of the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" *Logan*, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." *Id.* (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" *Logan*, 96 F.3d at 978 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)).

***Outlaw***, 259 F.3d at 837.

For responding to summary judgment, plaintiff was provided the notice to a *pro se* litigant that is required by Seventh Circuit precedent and Local Rule 56.1. *See* ECF 125. Plaintiff, though, did not directly respond to defendants' statement of material facts as is required by Local Rule 56.1(b)(3)(A)-(B). Plaintiff only provides a statement of additional facts as provided for in Local Rule 56.1(b)(3)(C). Defendants contend that all of their asserted facts should be taken as true since plaintiff did not directly respond as required by Local Rule. It is, however, within the court's discretion as to how strictly to enforce that rule and this bench generally does not enforce it strictly, particularly as regards a *pro se* litigant, if the litigant responds in a manageable form with supporting documents. *See **Love v. Hardy***, 2013 WL 3353920 *1 (N.D. Ill. July 2, 2013). While the facts asserted in defendants' statement will generally be taken as true, plaintiff's factual presentation will be fully considered and, to the extent adequately supported, taken as true including to the extent it contradicts facts asserted in defendants' statement. Also, plaintiff is *sua sponte* granted leave to file a statement of additional facts that exceeds 40 paragraphs.

Defendants contend certain documents submitted by plaintiff in support of his factual assertions should not be considered because not disclosed as required by Fed. R. Civ. P. 26(a)(1)(i)-(ii). According to defendants, affidavits and declarations of two prison employees and three inmates are from persons who were not disclosed as having discoverable information. Defendants also represent that certain documents purporting to be communications from plaintiff regarding requested medical treatment or grievances do not appear in plaintiff's prison file and were not disclosed by plaintiff during discovery. There is no contention by defendants that plaintiff failed to respond to a document request propounded by defendants or that defendants issued an interrogatory requesting a list of witnesses and plaintiff failed to include these witnesses. The only contention is that *pro se* plaintiff failed to comply with his obligations under Rule 26(a)(1). In this case, discovery was supervised by the assigned magistrate judge. No representation is made regarding whether plaintiff's Rule 26(a)(1) obligations were ever raised during a proceeding before the magistrate judge. The court is reluctant to penalize a *pro se* litigant for failing to satisfy a discovery obligation of which he might not have been aware. Also, there is no declaration or affidavit from defendants' counsel supporting the representations contained in the reply and, since raised in

defendants' reply, plaintiff has not had an opportunity to respond. This is not a circumstance in which undisclosed evidence is being presented at trial without any prior notice. At this time, the affidavits, declarations, and documents will be considered. If plaintiff's case survives summary judgment and defendants so desire, they may move for further limited discovery prior to any trial.

Defendants also contend that plaintiff's statement of additional facts contains assertions that are irrelevant to the issues before the court. To the extent any asserted facts are irrelevant, they need not be addressed because they will not affect the ruling on summary judgment which focuses on material factual disputes. There is no need to strike irrelevant factual assertions from the record nor to expressly rule as to whether every particular factual assertion is irrelevant or not.

This court previously ruled on a motion to dismiss based on failure to exhaust administrative remedies. *See* Order dated Feb. 14, 2013 [ECF 44] (*"**McMurtry 44**"*). Claims against another Stateville physician, Evaristo Aguinaldo, were dismissed for failing to file any grievance regarding his conduct. *Id.* at 8-9. As to defendant Ghosh,[1] claims for damages were limited to treatment

---

[1]The same ruling also applied to another Stateville physician, Liping Zhang, but claims against her were dropped when plaintiff subsequently filed his First Amended Complaint ("FAC"). Claims against defendant Wexford Health Source, Inc. (the employer of the individual defendants) were also dropped

(or a lack thereof) that was provided between December 2008 and August 19, 2009 based on grievances that had been adequately exhausted. ***McMurtry 44***, at 8; *see also* Order dated Aug. 8, 2013 [ECF 93]. It was further held that, in order to satisfy the applicable statute of limitations, it would have to be shown that any violation during this time period was part of a continuing violation that continued until at least September 1, 2010. ***McMurtry 44***, at 8; *see also* Order dated Dec. 6, 2012 at 1 [ECF 29]; Order dated Sept. 12, 2012 at 2 [ECF 6]. Although named in the original Complaint, defendant Carter had not yet been served at the time of the ***McMurtry 44*** ruling and therefore had not joined in the motion to dismiss. Plaintiff had nevertheless addressed whether he had exhausted administrative remedies regarding Carter and it was indicated in *dictum* that claims against Carter would be limited to conduct occurring from December 2011 through February 2012. ***McMurtry 44***, at 9. When Carter subsequently moved to dismiss the FAC, the ruling as to the applicable time period was expressly held to apply to the claims against Carter. Order dated Aug. 8, 2013 [ECF 93].

In their summary judgment motion, defendants assert that the entire claims against them should be dismissed on exhaustion grounds. *See* Def. Brief

_____

when the FAC was filed. See Order dated July 17, 2013 [ECF 85]; *see also* FAC [ECF 86].

at 3-4 [ECF 123]. However, defendants do not develop this argument. In their opening brief, defendants fail to discuss any facts regarding exhaustion other than to conclusorily assert that plaintiff did not timely submit his grievances or complete the entire grievance process. In their brief, defendants cite to their Exhibit 1 [ECF 123-1], which is plaintiff's entire grievance file. No facts regarding exhaustion are asserted in defendants' Rule 56.1 Statement of Material Facts [ECF 124] and there is no citation to Exhibit 1 in the Statement. Defendants do not contend that the facts now before the court are any different that those that were before the court on the motion to dismiss the original Complaint. The presently undeveloped argument appears to be an attempt--most likely unnecessary--to ensure that exhaustion arguments previously raised in the motion to dismiss are not waived. Since not adequately supported with a factual presentation, the exhaustion contentions in the summary judgment brief will not be considered. The time limitations previously held to apply to plaintiff's claims will continue to be applied.

To succeed on his deliberate indifference to medical needs claim, plaintiff bears the burden of showing (1) he had an objectively serious medical need, (2) each defendant was aware of it, and (3) each defendant acted with

deliberate indifference to the need. *King v. Kramer*, 680 F.3d 1013, 1018

(7th Cir. 2012). Although plaintiff devotes much of his brief to establishing that

he has a serious medical need, defendants do not contend that he cannot satisfy

that element on summary judgment. Defendants instead contend that they were

generally  not notified that plaintiff was complaining he was receiving inadequate

treatment for his back and that, when they were aware of plaintiff's need for

treatment, they provided treatment and did not act with deliberate indifference. To

be deliberately indifferent, a responsible official must be "aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists,"

draw the inference that there is a significant likelihood the harm will occur, and

fail to take reasonable steps to prevent the harm. *Pittman ex rel. Hamilton v.*

*County of Madison, Ill.*, 746 F.3d 766, 775-76 (7th Cir. 2014). In order to be

liable, a defendant must be personally involved in and responsible for the deficient

medical treatment. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009);

*Brown v. Wexford Health Sources*, 2014 WL 7014111 *9 (S.D. Ill. Dec. 11,

2014). Stateville physicians and Medical Directors are employees of outside

contractor Wexford. They can request that an inmate be scheduled for an

appointment, but the actual responsibility for scheduling the appointment and

ensuring that the inmate is transported to the appointment is the responsibility of prison personnel. The physician cannot be liable based on prison personnel failing to deliver an inmate to an appointment or if the inmate's own conduct prevents the inmate from attending the appointment. *Brown v. Ghosh*, 2014 WL 3360564 *5 (N.D. Ill. July 9, 2014). Similarly, Stateville physicians cannot be held liable if the inmate is prevented from attending an appointment because there is a lockdown. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Johnson v. Dismore*, 2011 WL 3163180 *5 (S.D. Ill. July 26, 2011). Additionally, defendants contend plaintiff's claim fails because he cannot show that any deficient treatment that did occur caused him any injury. *See Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013).

Drawing all reasonable inferences and resolving all genuine factual disputes in plaintiff's favor, the facts assumed to be true for purposes of summary judgment are as follows. Plaintiff has been in the custody of the Illinois Department of Corrections ("IDOC") for more than 13 years. He arrived at Stateville in December 2006. Defendant Ghosh was employed by Wexford to serve as a physician and Medical Director at Stateville from December 17, 2005 until he retired on March 31, 2011. Defendant Carter was an employee of

Wexford serving as a physician and Medical Director at Stateville from July 25, 2011 to May 10, 2012.

December 2006 transfer papers indicate plaintiff complained of back pain due to a history of a slipped disc. At a February 26, 2007 appointment[2] with Physician Assistant ("P.A.") LaTanya Williams, plaintiff complained of off-and-on, low back pain that he had suffered from for 14 years. He stated that, due to a slipped disc, his back goes out three to four times a year. Williams ordered a back support, Motrin, and Robaxin (a muscle relaxer). She also gave him directions regarding caring for his back. In a declaration, plaintiff states that Williams also told him she would have Dr. Ghosh see him. However, even if true, that referral is not documented in the medical records so there is no basis for finding that Williams so informed Dr. Ghosh.

Between the February 26, 2007 appointment and a November 7, 2008 appointment, plaintiff had five documented medical appointments, plus one that was cancelled due to a lockdown. The record for each appointment indicates plaintiff was asked about other problems and he made no mention of any problem with his back except that the records for a September 10, 2008 appointment

---

[2]Discussion of events occurring outside the time period covered by submitted grievances is being provided as background.

document that plaintiff reported his back was better. For this time period, however, plaintiff provides four medical services request forms requesting treatment for his back.[3] He provides declarations supporting that he submitted these requests. There are, however, no entries in his medical records supporting that the slips were actually received. Contending that the slips were actually submitted is also inconsistent with the medical records supporting that, when he was at medical appointments, plaintiff did not complain about his back. Further, the supporting declarations include assertions that, despite submitting the requests, plaintiff was not receiving medical appointments which is inconsistent with the medical records showing a number of appointments. Since plaintiff provides the declarations and request slips, it would be taken as true that he actually submitted these requests, as well as later ones submitted during more pertinent time periods, that is, during the time periods for which plaintiff has preserved claims. However, submission of the request slips cannot be a material fact if Ghosh and Carter were not informed regarding them. There is no indication that the slips are submitted to the physicians and not to IDOC personnel. Since the request slips were not noted

---

[3]These and other such request slips are among the documents that defendants contend should not be considered because not previously disclosed by plaintiff and not in his medical or other prison files.

in plaintiff's medical files, there is no basis for inferring that defendants were aware of the request slips nor any assertions about plaintiff's back that are contained therein.

On November 7, 2008,[4] plaintiff was seen by Dr. Ghosh regarding his back pain. Ghosh noted a history of lower back pain and noted that a lumbar spine MRI should be taken to rule out a right disc prolapse. He also ordered Motrin and Robaxin; a "lay in" for ten days; and a low-bunk and low-gallery permit through March 31, 2009. On December 22, 2008, plaintiff was taken for the MRI, but it could not be performed because he has metal in his body, bullet fragments and one or more metal plate.

Plaintiff contends he sent a December 25, 2008 letter to Ghosh pleading to be seen by him. However, the document is not a letter, but another medical request slip on which, for "type of request," he checked the line for "medical" and also wrote "letter to Dr. Ghosh" on the"Other (specify)" line. He wrote: "Dear Dr. Ghosh, you sent me to the U. of I. for a M.R.I. Sir, the test could not get done

_____

[4]Plaintiff contends that, on November 7, he spent hours in a wheelchair waiting to be seen, but was not seen by Ghosh until the next day. Medical records, however, support that plaintiff was seen on November 7. Also, time records show that Ghosh was not at Stateville on November 8, 2008. In any event, even if there was a one-day delay, it falls outside the time period covered by plaintiff's grievances.

because I have bullet fragments in my body. You failed to see me once I returned. My back is hurting me, please call me. Thanks." Pl. Exh. K-1 [ECF 134 at 159[5]]. Again, even taking as true that plaintiff actually submitted this document on December 25, 2008,[6] the request slip did not make it into plaintiff's medical file and there is no sufficient basis for inferring that Dr. Ghosh actually saw it. From January 1 through May 10, 2009, plaintiff submitted seven medical request slips, but, again, they do not appear in his medical file and there is no sufficient basis for inferring that Dr. Ghosh received any of them.

In response to plaintiff's December 27, 2008 grievance, a prison Counselor reported that a follow-up with Dr. Ghosh was pending. However, the Grievance Officer checked the medical records and found that no appointment was actually pending. In her February 5, 2009 resolution of the grievance, the Grievance Counselor concluded "Medical records staff will bring grievance file to Dr. Ghosh's attention, and appointment should be made in a reasonable amount of time. No additional action necessary." Pl Exh. C-1 at 2 [ECF 134 at 71]. There is

---

[5]ECF citations to page numbers are to the ECF page number which does not always correlate with the party's numbering of the document.

[6]There is also no mention of this document in the December 27, 2008 grievance that plaintiff filed.

no indication that an appointment was actually scheduled as a result of the grievance, but that would have been the responsibility of prison personnel processing the grievance and medical personnel other than Medical Director Ghosh.

On March 11, 2009, plaintiff was seen at the hypertension clinic by someone other than Dr. Ghosh. There is a notation regarding elbow pain, but nothing regarding any back pain. On March 17, 2009, there is an entry by a Certified Medical Technician ("CMT") in which it is stated that plaintiff wrote a letter regarding lower back pain and an appointment is scheduled for March 25. ECF 124-1 at 46. There is no evidence supporting that Dr. Ghosh would have seen this entry prior to his next appointment with plaintiff. On March 25, a P.A. notes that the appointment was cancelled due to lack of staffing and rescheduled to April 1 or 4, but again cancelled due to a lockdown. *Id.* On April 11, 2009, plaintiff was seen by Dr. Ghosh. Dr. Ghosh noted the back pain and that the MRI could not be performed due to a prior gunshot wound.[7] Dr. Ghosh continued the

---

[7]Plaintiff contends that, on this same date, he continued to complain to a CMT that he was not receiving the MRI recommended by Dr. Ghosh. The cited document (*see* Pl. Stmt of Facts ¶ 18 [ECF 134 at 9]), progress notes of Dr. Ghosh, does not support that such statements were made to a CMT. In any event, with metal in his body, it was not possible to perform magnetic imaging on plaintiff. Dr. Ghosh instead ordered an X-ray.

Motrin and Robaxin and ordered a lumbar spine X-ray. The X-ray was performed on April 15, 2009, with the following findings noted: "Minimal DJD [degenerative joint disease]; Post traumatic defect lateral margin of [right] ilium [uppermost bone of the pelvis]. Otherwise neg. [negative]." Def. Exh. A at 266 [ECF 124-3 at 30]. The report is initialed as having been reviewed on April 16, though that may have been review by another radiologist, not review by a Stateville physician.

A CMT note from May 29, 2009 states that plaintiff wrote a letter complaining of elbow pain. An appointment was scheduled for June 3. On June 3, plaintiff was seen by Dr. Zhang. The progress notes are not fully legible, but concern pain in a tender elbow. ECF 124-1 at 47.

On June 18, 2009, plaintiff filed a grievance alleging that, when he saw Dr. Zhang for another matter on June 3, he asked about the results of his back X-ray, which he alleged had not been previously reviewed.[8] The requested relief in the grievance is that Dr. Ghosh be the physician treating plaintiff for his back. The grievance was submitted as an emergency grievance, but found not to be an

_____

[8]This is a recitation of the allegations in the grievance. Plaintiff does not point to separate testimony or a declaration supporting the truth of the allegations. Also, the allegations in the grievance are not fully consistent with the medical records.

emergency and plaintiff was directed to resubmit it as a regular grievance, which he apparently did.   ECF 123-1 at 20-21.  In an August 19, 2009 memorandum response to the grievance, Dr. Zhang stated that she reviewed the medical records and that plaintiff "received proper care for his chronic back pain.  An MRI was ordered but not done due to metal parts in his body.  The case was discussed with Medical Director [Ghosh].  No other tests are indicated or planned.  He was prescribed pain medication and back brace on last two visits."  *Id.* at 22.  On September 24, 2009, the Grievance Officer accepted Dr. Zhang's analysis and made the following determination:  "It appears that this grievance issue has been resolved.  This Grievance Officer has no medical expertise or authority to contradict the doctor's recommendation/diagnosis."  *Id.* at 19.

On July 2, 2009, plaintiff was to be seen by a physician at the hypertension clinic, but he refused to wait for the doctor.  ECF 124-1 at 51.  At his July 27, 2009 hypertension clinic appointment, plaintiff's complaint of elbow pain is noted; there is no noted complaint of back pain.  *Id.* at 52.

On August 15, 2009, Dr. Zhang gave plaintiff a cortisone shot for his back.  *Id.* at 55.

Between August 15, 2009 and September 28, 2011, plaintiff had a number of medical appointments and various written and oral medical complaints are noted in his medical records. He was seen for sinus and headache complaints and had his knee X-rayed. None of the medical appointment notes mention complaints of back pain and none of the written or oral complaints concern back pain. For purposes of summary judgment, it is also assumed to be true that, during this time period, plaintiff continued to submit request slips that mentioned his back. However, none of those slips are noted in the medical records and there is no sufficient basis for assuming that defendants Ghosh or Carter (or Dr. Zhang) was aware of them. Plaintiff did submit grievances dated May 3 and May 18, 2010 in which he complained he was not receiving adequate treatment for his back. Plaintiff submitted the May 3 grievance as an emergency and it was rejected as such and it was also noted that he had seen Dr. Zhang on April 10. The grievance was returned to plaintiff to be discussed with his counselor. ECF 123-1 at 9-10. The May 18 grievance complains about the May 3 grievance not being

processed.  *Id.* at 8.  The resolution of this grievance is not indicated.[9]  There is no evidence that Dr. Ghosh (or Dr. Zhang) saw either of these grievances.

As previously noted, Dr. Ghosh retired on March 31, 2011 and Dr. Carter began working at Stateville on July 25, 2011.

On September 28, 2011, a CMT notes in plaintiff's medical file that plaintiff is complaining of lower back pain that is not being helped by medication. He was scheduled for an October 1 appointment with an R.N., but that appointment was cancelled due to lack of staff and rescheduled a few more times before he saw P.A. Williams on October 26.  ECF 124-1 at 91.  At that appointment, plaintiff complained that his back was worsening.  The P.A. ordered Naproxen,, analgesic balm and heat, and referred plaintiff to Dr. Carter.  *Id.* at 92. An October 14, 2011 transfer screening notes that plaintiff is receiving certain medications and that he has back and elbow braces and a medical restraint.  *Id.* at 93.

---

[9]On September 13, 2010, the ARB returned the May 18 grievance to plaintiff.  ECF 123-1 at 15.  (The photocopying of this document is deficient and therefore not fully legible.)  There is also a  September 27, 2010 memo from the Administrative Review Board ("ARB") chairperson stating:  "I copied some grievances and sent them to you re:  McMurtry N81629.  He may need a response so that he can get a response from ARB.  I don't think Margaret gave him a response."  ECF 134 at 77.  This may or may not be referring to the May 2010 grievances, but, if it is, there is nothing to indicate what happened thereafter.

On November 24, 2011, plaintiff failed to appear for a flu vaccination. On November 28, 2011, plaintiff was out on a court writ and Dr. Carter directed that he be provided a medical restraint device.  *Id.* at 94.  On December 20, 2011, plaintiff was seen by a doctor after hot water spilled on his foot.  *Id.* at 95.  On December 22, he was seen by an R.N. for a dressing change and it was noted:  "No complaints at present time."  *Id.* at 96.  At his deposition, plaintiff testified that his back was not bothering him at that time and the pain was being managed by medication.  Pl. Dep. at 93-94 [ECF 124-6 at 24-25].  Plaintiff was seen for follow-ups for the foot on December 25 and 26 and a hypertension clinic on December 28 and made no complaints about his back.  ECF 124-1 at 97-100.

Plaintiff cites to additional medical service requests that he contends Dr. Carter ignored.  None of the purported passes, however, were submitted during the time period that Dr. Carter was at Stateville.  *See* Pl. Stmt. of Facts ¶ 36 [ECF 134 at 15]; Pl. Exhs. B23-26 [ECF 134 at 67-70].

On December 19, 2011, plaintiff submitted another grievance complaining of delays in treating his back, specifically including that the P.A. had referred him to Dr. Carter on October 11 and he still had not seen Dr. Carter.  On January 11, 2012, the grievance was sent to the Health Care Unit for review and

response.  In a memorandum dated January 30, 2012, an R.N. Supervisor responded that plaintiff was scheduled to see Dr. Carter on February 10.  On February 6 and 14, respectively, the Grievance Officer and Chief Administrative Officer accepted this response and determined:  "Issue appears to be resolved as grievant appears to be receiving appropriate medical care at this time."  An appeal to the ARB was rejected as untimely.[10]  ECF 123-1 at 11-14.

Plaintiff's medical file states that he failed to appear for the February 10, 2012 appointment and there was no need to reschedule.  ECF 124-2 at 8.  Plaintiff contends he appeared for the appointment and his pass was cancelled after waiting three hours.  At his deposition, plaintiff testified that he sat for over three hours and then an officer told all the remaining inmates that they were cancelled and would be rescheduled.  Pl. Dep. at 86-87 [ECF 134 at 115].  Plaintiff also provides a copy of an appointment pass that he signed as accepted.  ECF 134 at 176.  On defendants' motion for summary judgment, this factual dispute must be resolved in plaintiff's favor.  It is assumed that the appointment was cancelled for some reason

---

[10]In *McMurtry 44*, at 5, 9, it was determined that plaintiff adequately exhausted because allegations supported that he was prevented from filing a timely appeal.  Again, defendants do not presently make arguments or point to evidence that different facts should presently be taken as true.

other than plaintiff's failure to appear.[11]  There is, however, no sufficient basis to infer that Dr. Carter cancelled the appointment with the intent to avoid treating plaintiff's back.  Plaintiff's own testimony is that he was not the only one whose appointment was cancelled.

On March 22, 2012, plaintiff saw a doctor at the hypertension clinic.  He again reported no complaints.  ECF 124-2 at 4.

As of his September 2013 deposition, plaintiff was taking Naproxen that had been prescribed by the then-current Medical Director.  In response to whether it helped he answered:  "It eases it.  I take it, you know--I take it."  Pl. Dep. at 70 [ECF 124-6 at 19].

Plaintiff contends that his medical treatment has been deficient because both Ghosh and Carter failed to see him as often as plaintiff believes to be necessary for his back condition.  Plaintiff also contends that neither doctor has

---

[11]Plaintiff also contends that three other Medical Director appointments were cancelled, showing a pattern by Dr. Carter.  Pl. Stmt. of Facts ¶ 31 [ECF 134 at 13].  Two of those alleged appointments, however, were in October 2012, months after Dr. Carter left Stateville.  Also, plaintiff testified that when his appointment passes were cancelled, it was for all those still waiting to be seen or was done for everyone before being taken to the Health Care Unit.  Pl. Dep. at 115 [ECF 124-6 at 30].  Plaintiff was not being singled out for cancellation.

adequately diagnosed his back condition because, even if he cannot be subjected to an MRI, a CT Scan should be ordered.

The undisputed facts before the court support that, although not seen by the Stateville Medical Director as often as he would prefer, plaintiff was seen by medical personnel throughout the time periods covered by his claims. An MRI was ordered, but could not be performed due to the metal in plaintiff's body. Instead, an X-ray was taken that showed mild degeneration in the joint. There is no sufficient evidence to support that a CT Scan was medically necessary and the evidence is certainly not sufficient to determine that it was deliberate indifference not to order one. While there were some delays in getting appointments, evidence does not support that the delays were intentionally caused by defendants. Plaintiff has a recurring back problem that responded to the medication and devices that were prescribed, but with occasional flare ups. Evidence does not support that either defendant acted with deliberate indifference. Defendants are entitled to summary judgment dismissing plaintiff's claims. Alternatively, defendant Ghosh is also entitled to summary judgment because plaintiff has not shown a continuing violation that runs from August 2009 until at least September 1, 2010.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [122] is granted. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff dismissing plaintiff's cause of action with prejudice. If plaintiff wishes to appeal this order, he must file a Notice of Appeal to the United States Court of Appeals for the Seventh Circuit with the Clerk of the Court, United States District Court for the Northern District of Illinois, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604, within thirty (30) days of the entry of the judgment in this case. A motion for leave to appeal *in forma pauperis* should set forth the issues plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). Plaintiff is advised that, if he chooses to appeal, he will be responsible for paying the appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, plaintiff may accumulate a strike under 28 U.S.C. § 1915(g).

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED: MARCH 5, 2015